UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| NATHAN ANDREW GROVES | ) | |
| and JOEL FLAKE STROUD, | ) | Civil Action No.: 4:08-cv-0402-TLW-TER |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CITY OF DARLINGTON, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

This action arises out of the arrests of Plaintiffs by police officers of Defendant on separate charges for which they were both convicted in absentia.  As discussed in more detail below, most of Plaintiffs' claims cannot be pursued in this court at this time under 42 U.S.C. § 1983 against this Defendant or based on the holding of Heck v. Humphrey, 512 U.S. 477 (1994), which requires that the convictions be reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination or called into question by a writ of habeas corpus, before Plaintiffs may pursue a damages claim arising out of those convictions.  Plaintiffs' claims that are not barred by Heck are also subject to dismissal for failure to create a genuine dispute of material fact.

Plaintiffs allege causes of action under 42 U.S.C. § 1983 for unlawful arrest, excessive force, civil conspiracy and first amendment retaliation as well as violation of Plaintiff Groves' right to travel under both the Privileges and Immunities Clause and Commerce Clause of the U.S. Constitution.  Presently before the Court is Defendant's Motion for Summary Judgment (Document

# 172).  This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and

(B) and Local Rule 73.02(B)(2)(e), DSC.  Because the Motion for Summary Judgment is potentially

dispositive of Plaintiffs' claims, this Report and Recommendation is entered for review by the

district judge.

## II.    FACTS[1]

Plaintiff Groves was arrested by the City of Darlington Police Department on or about

December 16, 2006, for driving under the influence following his stop at an automobile safety

checkpoint in Darlington, South Carolina.  Cooke Aff. ¶ 7; Cox Aff. ¶ 3; Epps Aff. ¶ 7; Richardson

Aff. ¶ 7 (attached as exhibits to Defendant's Motion for Summary Judgment). Upon Mr. Groves'

vehicle being stopped, law enforcement officers detected a strong odor of marijuana coming from

his vehicle and they requested that Groves pull into an adjacent parking lot.  Cooke Aff. ¶ 4; Epps

Aff. ¶ 4; Richardson Aff. ¶ 4. Groves was read his Miranda Warning.  Cooke Aff. ¶ 5; Epps Aff. ¶

5; Richardson Aff. ¶ 5.  Law enforcement officers personally observed Groves' eyes to be glassy and

that he was having difficulty speaking.  Cooke Aff. ¶ 6; Epps Aff. ¶ 6; Richardson Aff. ¶ 6.  Then

City of Darlington Police Officer William Epps asked Groves when he last smoked marijuana and

he stated that he had smoked a "bowl" of it earlier with his brother. Cooke Aff. ¶ 7; Epps Aff. ¶ 7;

Richardson Aff. ¶ 7.  During his deposition, Groves admitted that he, all of his brothers, and his

roommate smoke marijuana, and that marijuana had been smoked in the vehicle, but that he had not

done so within the twenty-four (24) hours prior to his arrest.  Groves Dep. pp. 85-89 (attached as an

---

[1]Plaintiffs have failed to present any factual evidence in opposition to that presented by
Defendant in its Motion.  Thus, the facts as presented by Defendant are undisputed, see Celotex
v. Catrett, 477 U.S. 317, 324 (1986) (holding that to show that a genuine dispute of material fact
exists, a party may not rest upon the mere allegations or denials of his pleadings), and are set
forth below.

exhibit to Defendant's Motion for Summary Judgment). Thereafter, Officer Epps placed Groves under arrest for Driving Under the Influence.  Cooke Aff. ¶ 7; Cox Aff. ¶ 3; Epps Aff. ¶ 7; Richardson Aff. ¶ 7. Officer Leondre K. Richardson then transported Groves to the Darlington City Police Department for a Datamaster Test. Cooke Aff. ¶ 8; Epps Aff. ¶ 8; Richardson Aff. ¶ 8. Groves was read his Advisement of Implied Consent Rights for the breath test and consented to same.  Cooke Aff. ¶ 8; Epps Aff. ¶ 8; Richardson Aff. ¶ 8.  The results of the breath test were .00% BAC.  Cooke Aff. ¶ 8; Epps Aff. ¶ 8; Richardson Aff. ¶ 8.  Groves was then transported to the McLeod Regional Medical Center for urine collection.  Cooke Aff. ¶ 9; Epps Aff. ¶ 9; Richardson Aff. ¶ 9.  Groves was again read his Miranda Warning and his Advisement of Implied Consent Rights for the urine collection.  Cooke Aff. ¶ 9; Epps Aff. ¶ 9; Richardson Aff. ¶ 9.  A nurse witness and Officer Richardson were present for the urine collection.  Cooke Aff. ¶ 10; Epps Aff. ¶ 10; Richardson Aff. ¶ 10.  However, Groves stated that he would not provide a sample with the officer and the nurse in the room.  Cooke Aff. ¶ 10; Epps Aff. ¶ 10; Richardson Aff. ¶ 10.  Groves was advised that their presence was required for the urine collection.  Cooke Aff. ¶ 10; Epps Aff. ¶ 10; Richardson Aff. ¶ 10.  Groves stated that he would not provide the urine sample.  Cooke Aff. ¶ 10; Epps Aff. ¶ 10; Richardson Aff. ¶ 10.Groves refused the urine collection.  Cooke Aff. ¶ 10; Epps Aff. ¶ 10; Richardson Aff. ¶ 10. A Notice of Suspension was completed and Groves was transported to the Darlington County Detention Center for booking.  Cooke Aff. ¶ 11; Epps Aff. ¶ 11; Richardson Aff. ¶ 11.  Groves was provided a copy of all paperwork regarding the Datamaster and his refusal of the urine collection.  Cooke Aff. ¶ 11; Epps Aff. ¶ 11; Richardson Aff. ¶ 11. Subsequently, Groves was tried in absentia in the Darlington Municipal Court and convicted of driving under the influence. See Plaintiffs' Status Report and Exhibit (Doc. # 171).

On November 14, 2007, Stroud was arrested for disorderly conduct at the Darlington City Police Department/Municipal Court building following a conversation with City of Darlington Police Chief Jay Cox relative to Groves' arrest. Cox. Aff. ¶ 4; Richardson Aff. ¶ 12; Prosser Aff. ¶ 8. According to Wendell Prosser, an independent witness to Stroud's arrest, Prosser was sitting in the lobby of the Darlington City Police Station/Municipal Court on November 14, 2007. Prosser Aff. ¶ 2. At that time, Prosser observed Stroud speaking with a gentleman. Prosser Aff. ¶ 3. Prosser heard Stroud tell the gentleman that he was going to pay. Prosser Aff. ¶ 3. The gentleman was very nice and attempted to leave. Prosser Aff. ¶ 3. Stroud continued to say that he was going to "get" someone and continued to be loud and disruptive. Prosser Aff. ¶ 4. At that time, Chief Cox of the City Darlington of Police Department asked Stroud to leave the premises. Prosser Aff. ¶ 5. Chief Cox spoke with Stroud in a professional, calm and nice manner. Prosser Aff. ¶ 5. Stroud continued to be loud and disruptive and refused to leave the premises. Prosser Aff. ¶ 6. Chief Cox again requested that Stroud leave. Prosser Aff. ¶ 6. Thereafter, Stroud sat down and said he would leave only when he was ready. Prosser Aff. ¶ 7. Chief Cox again requested that Stroud leave the premises. Prosser Aff. ¶ 7. However, Stroud refused to do so. Prosser Aff. ¶ 7. Chief Cox then asked Stroud to put his hands behind his back, told him that he was under arrest, advised him of his Miranda rights, and took him into custody. Prosser Aff. ¶ 8. Stroud refused to get into the police car and was required to be placed therein. Prosser Aff. ¶ 8. At no time did it appear to Prosser that either Chief Cox and/or anyone else from the City of Darlington did anything improper. Prosser Aff. ¶ 9. The arrest of Stroud appeared to Prosser to be to lawful and proper, based upon Stroud's loud, disruptive, and defiant conduct which Mr. Prosser personally observed. Prosser Aff. ¶ 10. Prosser's observations of Stroud's behavior are corroborated by the observations of Officer Richardson and

Chief Cox who participated in Mr. Stroud's arrest. Cox Aff. ¶¶ 4-10; Richardson Aff. ¶¶ 12-18.

Furthermore, Stroud's behavior leading to his arrest is consistent with his behavior earlier the same

day, as observed by Lt. Daniel Watson, who was present in the courtroom during a hearing in which

Stroud participated. Watson Aff. ¶ 2.[2] Following Stroud's arrest for disorderly conduct, the instant

lawsuit followed. Stroud was also tried in absentia in the Darlington Municipal Court and convicted

for disorderly conduct. See Plaintiffs' Status Report and Exhibit (Doc. # 171).

## III.    STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary

judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to

judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Summary judgment is proper if the non-moving party fails to establish an essential element of any

cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317.

Once the moving party has brought into question whether there is a genuine dispute for trial on a

material element of the non-moving party's claims, the non-moving party bears the burden of coming

forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita

Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party

must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could

reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and

---

[2]Lt. Watson describes Stroud's appearance during the hearing as "disheveled." Watson Aff. ¶ 2. His belt was undone and hanging out. Watson Aff. ¶ 3. His trousers also appeared to be undone. Watson Aff. ¶ 3. Stroud was loud and disrespectful to the Court during the hearing. Watson Aff. ¶ 5. He had to be instructed to control himself on numerous occasions by the judge. Watson Aff. ¶ 5. Stroud had several loud outbursts during the hearing. Watson Aff. ¶ 5. Stroud was also loud and disrespectful to the City Attorney during the hearing. Watson Aff. ¶ 6. Stroud refused to cooperate and refused to accept the Judge's ruling. Watson Aff. ¶ 7.

inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

IV.    DISCUSSION

A.    42 U.S.C. § 1983

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a

claim under § 1983, a plaintiff must establish two essential elements: (1) that the alleged violation

was committed by a person acting under the color of state law, and (2) that a right secured by the

Constitution or laws of the United States was violated. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct.

2250, 101 L.Ed.2d 40 (1988). Plaintiffs allege that their constitutional rights were violated through

unlawful arrest, use of excessive force, civil conspiracy, first amendment retaliation and restriction

of Groves' right to travel. However, before addressing the alleged constitutional violations, the court

must determine whether Defendant is a person acting under color of state law.

### B.     Municipal Liability

Plaintiffs name only the City of Darlington as a Defendant in this action. Municipalities and

other local governing bodies are included among those "persons" who may be sued under § 1983.

Monell v. Department of Social Services, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611

(1978). However, a county or city cannot be liable under § 1983 pursuant to respondeat superior

principles. See Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir.1999) ("municipalities are

not liable pursuant to respondeat superior principles for all constitutional violations of their

employees simply because of the employment relationship") (citing Monell, 436 U.S. at 692-94).

In other words, a municipality may not be held liable under § 1983 solely because it employs the

tortfeasor; rather, a plaintiff must identify a municipal policy or custom that caused the plaintiff's

injury. Board of County Commissioners v. Brown, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626

(1997). See also McMillian v. Monroe County, Alabama, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d

1 (1997) ("If the sheriff's actions constitute county 'policy,' then the county is liable for them.");

Knight v. Vernon, 214 F.3d 544, 552-53 (4th Cir.2000).

To establish municipal liability, Plaintiffs must show that the municipality's policies caused

the constitutional violation. McMillian v. Monroe County, 520 U.S. 781, 784, 117 S.Ct. 1734, 138

L.Ed.2d 1 (1997). When a constitutional deprivation is not an official act of a municipality, recovery

lies only against an officer in his individual capacity. Hughes v. Blankenship, 672 F.2d 403, 405-06

(4th Cir. 1987). Plaintiffs appear to allege in their Amended Complaint that failure to allow Plaintiff

Groves to make a telephone call to a family member until after he was booked at the Darlington

County Detention Center is a custom, practice and policy of Defendant that is unlawful and

unconstitutional. Amended Complaint ¶ 233. They further allege that their arrests were unlawful

and were predicated on policy, custom and procedure of Defendant. Id. at ¶ 238. Plaintiffs also

allege that the breath and urine tests conducted on Groves were based upon policy, custom and usage

by Defendant City. Id. at ¶ 251. Finally, Plaintiffs allege that Defendant participated in a civil

conspiracy pursuant to Defendant's policy, custom and procedures. Id. at ¶¶ 259-60, 313. However,

Plaintiffs submit no factual evidence to support their allegations. Plaintiffs point to no specific

policy, custom or procedure, pursuant to which the individual officers in this case acted in making

the arrests of Plaintiffs.[3] The law enforcement officers of the City of Darlington Police Department

each indicate in their Affidavits that they are unaware of any unconstitutional policy statement,

ordinance, regulation, or decision adopted by the City of Darlington, Chief Cox, and/or the City of

---

[3]While, generally speaking, Defendant may have policies, customs or procedures relating to some of the issues raised by Plaintiffs in their Amended Complaint, the court would have to speculate as to the exact policy or custom that may exist. The undersigned is not aware of, and Plaintiffs fail to present authority for, any per se prohibitions relating to the general allegations. Furthermore, Plaintiffs do not allege, much less present evidence of, conduct relating to the alleged policies, customs, or procedures other than the particular circumstances giving rise to this action. In other words, even assuming misconduct occurred, a single act of misconduct is insufficient to establish a policy, custom or procedure. See Oklahoma City v. Tuttle, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (a single isolated incident of misconduct is not sufficient to establish a pattern or practice necessary to impose liability on a municipality).

Darlington Police Department, regarding the actions taken in this case.  Cooke Aff. ¶ 16; Cox Aff.

¶ 15; Epps Aff. ¶ 16; Richardson Aff. ¶ 24; Watson Aff. ¶ 10.  Their averments are undisputed.  In

his deposition, Stroud testifies that the only evidence he has indicating that Defendant is responsible

for the allegations contained in the Complaint is the Complaint itself.  Stroud Dep. p. 102; see also

Stroud Dep. pp. 100-02.  As stated above, a party opposing a motion for summary judgment may not

rest upon the mere allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324.  Rather, the

non-moving party must demonstrate that specific, material facts exist which give rise to a genuine

dispute. Id.  Plaintiffs have failed to do so.  Accordingly, it is recommended that summary judgment

be granted on Plaintiffs' claims arising under 42 U.S.C. § 1983 for failure to show that Defendant

City of Darlington can be held liable for these alleged constitutional violations.

In the alternative, it is recommended that summary judgment be granted on these claims for

Plaintiffs' failure to show that their constitutional rights were violated, as discussed below.

### C.    Claims Barred by Heck v. Humphrey

Plaintiffs allege that Plaintiff Groves' arrest for driving under the influence and Plaintiff

Stroud's arrest for disorderly conduct are unlawful because they are not supported by probable cause.

They further allege that Plaintiff Stroud's arrest was in retaliation for him exercising his First

Amendment right to free speech.  They also allege that the checkpoint at which Plaintiff Groves was

stopped and which lead to his arrest was unconstitutional because it violated his right to travel.

However, these claims are barred by the holding in Heck v. Humphrey, 512 U.S. 477 (1994).  In

Heck, the Supreme Court determined that where a prisoner files an action under § 1983 which would

necessarily implicate the validity of his conviction, he may not pursue the damages claim unless and

until he successfully attacks the conviction on which his suit is based. The Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm whose unlawfulness would render a conviction or sentence invalid, ... a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 487.

It is undisputed that both Plaintiffs have been convicted of the crimes for which they were charged. Further, those convictions have not been reversed, expunged or otherwise invalidated. A finding by this court that the arrests leading to those convictions were unconstitutional, either because the officers lacked probable cause[4] for the arrests or because the checkpoint leading to Groves' arrest was itself unconstitutional, would necessarily imply the invalidity of Plaintiffs' convictions. Therefore, Plaintiffs' claims of unlawful arrest, First Amendment retaliation[5] and violation of the right to travel are barred by Heck and summary judgment is proper.

---

[4] A finding that Plaintiff Stroud's arrest was made in violation of his First Amendment rights would require the court to find that officers lacked probable cause for the arrest. See Gardner v. Long, 2010 WL 1052730 (D.S.C. Feb. 24, 2010) (finding that if probable cause exists to arrest the plaintiff, an argument that an arrestee's speech rather than the criminal conduct was the motivation for the arrest must fail); Mesa v. Prejean, 543 F.3d 264, 273 (5th Cir. 2008).

[5] Plaintiffs also allege that Defendant "has threatened prosecutions, committed bad faith investigations, and legal harassment against Stroud, which constitute an infringement of Stroud's Freedom of Speech under the First Amendment of The United States Constitution." Amended Complaint ¶ 320. Plaintiffs have failed to provide sufficient evidence to support these allegations. Thus, summary judgment is proper on these claims as well.

D.     **Excessive Force**

Plaintiffs also allege that Defendant is liable for its officers' use of excessive force during their arrests.  It is not clear upon what factual allegations Groves relies in claiming that the officers used excessive force during his arrest.  Plaintiff Stroud alleges that as he "was forced into the backseat of the car, he hit his head on the roof." Amended Complaint ¶ 76.

Protection against force during arrest is provided by the Fourth Amendment.  Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).  All claims of use of excessive force during an investigatory stop or arrest or other seizures are governed by the Fourth Amendment's "objective reasonableness" standard. Id. The test for excessive force in the arrest context requires "balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governments interests alleged to justify the intrusion." Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The standard for measuring reasonableness of arrest is wholly objective. The objective reasonableness test requires careful attention to the circumstances of a particular case, including the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 396; Foote v. Dunagan, 33 F.3d 445 (4th Cir.1994). The focus is on reasonableness at the moment, recognizing that officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving.  Graham, 490 U.S. at 396.

Plaintiffs present insufficient evidence to support their allegations of excessive force.  In fact, Plaintiff Groves admits in his deposition that he did not think the physical force utilized upon him by law enforcement was "more than normal." Groves Dep. p. 107.  Groves claims that the force

-11-

utilized against him was excessive merely because he thought his arrest was improper and for the

mere fact that he had to go through "any of this" in the first place. Groves Dep. p. 108.  Groves

claims no physical injury from any alleged excessive force.  Groves Dep. p. 129.  Further, the

officers involved in Groves' arrest indicate that his arrest was effectuated without incident.  Cooke

Aff. ¶¶ 4, 8-9; Epps Aff. ¶¶ 4, 8-9; Richardson Aff. ¶¶ 4, 8-9.  Thus, Plaintiff Groves has failed to

present evidence or even sufficiently allege that any force was used during his arrest, much less

excessive force.

As stated above, Plaintiff Stroud alleges that he hit his head when he was forced into the

police car following his arrest.  Officer Richardson, who was involved in Stroud's arrest, avers that

Stroud deliberately tried to resist going into the backseat of the patrol vehicle and had to be placed

therein. Richardson Aff. ¶ 17. Prosser, who witnessed Stroud's arrest, also avers that Stroud refused

to get into the police vehicle and had to be placed therein.  Prosser Aff. ¶ 8; see also Cox Aff. ¶ 9.

Further, Stroud admitted during his deposition that "there was no police brutality" and that no

physical injuries were sustained as a result of any alleged excessive force. Stroud Dep. p. 59-60.

Accordingly, Stroud also fails to present sufficient evidence to support his claim of excessive force.

Based on the evidence presented, the undersigned finds Plaintiffs fail to create a genuine dispute of

fact as to their claim of excessive force and recommends that summary judgment be granted on this

claim.

### E.    Civil Conspiracy

Plaintiffs also allege that Defendant participated in a civil conspiracy to deprive Plaintiffs of

their constitutional rights.  Plaintiffs allege that Defendant conspired to obstruct, delay any otherwise

deny Plaintiffs' access to courts by withholding discovery and vindictively prosecuting the charges

against them.  Amended Complaint ¶¶ 253-56.

To establish a civil conspiracy under § 1983, Plaintiffs must prove that two or more persons acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in Plaintiffs' deprivation of a constitutional right.  Hinkle v. City of Clarksburg, WV, 81 F.3d 416, 421 (4th Cir.1996).  To meet the "weighty burden to establish a civil rights conspiracy[,]" .... "[the plaintiff] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective."  Id.  Thus, the "evidence must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan."  Id.  Isolated acts by defendants that fail to evidence a shared understanding will not suffice to survive a motion for summary judgment. Id. at 421-23.

As an initial matter, Plaintiffs have named only one Defendant.  They have failed to identify with whom the City of Darlington participated in a conspiracy.  On this deficiency alone, Plaintiffs' claim must fail.[6]  Furthermore, Plaintiffs also fail to present specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective.  No genuine dispute of material facts exists as to Plaintiffs' claim of civil conspiracy.  Therefore, it is recommended that summary judgment be granted as to this cause of action as well.

## V.     CONCLUSION

For the reasons discussed above, it is recommended that Defendant's Motion for Summary Judgment (Document # 172) be granted and this case be dismissed in its entirety.  If the district judge

---

[6]To the extent Plaintiffs allege that Defendant's employees conspired with one another, such a claim is barred by the intracorporate conspiracy doctrine.  See Buschi v. Kirven, 775 F.2d 1240, 1251-53 (4th Cir.1985).

accepts this recommendation, all other pending motions will be moot.


                                       s/Thomas E. Rogers, III
                                       Thomas E. Rogers, III
                                       United States Magistrate Judge

January 14, 2011
Florence, South Carolina


**The parties are directed to the important notice on the attached page.**