IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Nathan Andrew Groves and ) | |
| Joel Flake Stroud, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Civil Action No.: 4:08-cv-00402-TLW-TER |
| ) | |
| City of Darlington, South Carolina, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

# ORDER

The plaintiffs, Nathan Andrew Groves and Joel Flake Stroud ("plaintiffs"), brought this civil action pursuant to 42 U.S.C. § 1983 on February 5, 2008. (Doc. #1). On January 11, 2010, the plaintiffs filed an amended complaint. (Doc. # 72). On December 14, 2010, the defendant, City of Darlington, South Carolina ("defendant"), filed a motion for summary judgment. (Doc. # 172). The plaintiffs filed a response (Doc. # 176) to which the defendant filed a reply. (Doc. # 177). The plaintiffs do not provide any deposition testimony, affidavits, or other evidence with their response in opposition to the defendant's motion. In their response (Doc. # 176), the plaintiffs raise the argument that the defendant's motion for summary judgment is not timely filed because the scheduling order in place set a deadline of September 15, 2010 for filing dispositive motions (Doc. # 96). On December 22, 2010, United States Magistrate Judge Thomas E. Rogers, III issued an amended scheduling order, which set a deadline of December 15, 2010 for filing all dispositive motions with the exception of those motions deemed nonwaivable under Federal Rule of Civil Procedure 12. (Doc. # 178). In light of the order extending the deadline for filing dispositive

1

motions, the Magistrate Judge also gave the plaintiffs twenty (20) days from the date of the amended scheduling order to file a supplemental response to the defendant's motion for summary judgment. (Doc. # 178). The plaintiffs did not file a supplemental response.

This matter now comes before this Court for review of the Report and Recommendation ("the Report") filed by United States Magistrate Judge Thomas E. Rogers, III to whom this case had previously been assigned. (Doc. # 205). The matter was referred to the Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), DSC. In the Report, the Magistrate Judge recommends that the District Court grant the defendant's motion for summary judgment and dismiss this case in its entirety. (Doc. # 205). The plaintiffs filed objections to the report. (Doc. # 207). In conducting this review, the Court applies the following standard:

> The magistrate judge makes only a recommendation to the Court, to which any party may file written objections . . . . The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a de novo determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the Report and Recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case, the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

Wallace v. Housing Auth. of the City of Columbia, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations omitted).

The plaintiffs object to the Magistrate Judge's conclusion that summary judgment should be granted because they fail to sufficiently identify or provide factual evidence in support of a custom or policy fairly attributable to the municipality that proximately caused their injuries. In Monell v. Department of Social Services of the City of New York, the Supreme Court held that "a local

government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. The plaintiffs base their objection on Pembaur v. City of Cincinnati where the Supreme Court held that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." 475 U.S. 469, 480 (1986). The Court reasoned that "a government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations." Id. at 481. "[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." Id.

"Section 1983 plaintiffs seeking to impose liability on a municipality must . . . adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." Jordan ex rel. Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994). Pembaur is an example of a situation in which such a policy or custom does not derive from municipal ordinances but rather from "formal or informal ad hoc 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy." Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir. 1987). In addition, when attempting to impose liability based on the decision of a final policymaker, the plaintiff has the burden of identifying the "municipal officials with 'final policymaking authority' to implement the alleged policy." Riddick v. Sch. Bd. of the City of Portsmouth, 238 F.3d 518, 523 (4th Cir. 2000).

As the nonmoving party with the burden of proof on this dispositive issue, the plaintiffs fail

3

to demonstrate there is a genuine dispute of material fact regarding whether their alleged injuries were caused by a municipal policy or custom. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In their objections, the plaintiffs argue that the defendant has a policy of allowing, condoning, and ratifying the decisions of Jay Cox, the Chief of Police for the Darlington City Police Department. They also argue that the defendant acquiesces and tolerates "the Chief's unprofessional behavior and downplay the Chief's problems with anger management." However, the plaintiffs do not present sufficient evidence to create an issue of fact over whether these policies actually exist or over whether these alleged policies caused their injuries.[1] See Monell, 436 U.S. at 694; Bd. of

---

[1] In his deposition, Stroud testifies that the only evidence he has of any specific municipal policies, practices, decisions, or omissions is allegations and that the only evidence he has indicating the City of Darlington was responsible for the allegations in the amended complaint is the complaint itself. Stroud Dep. 100, 102, Sept. 30, 2010 (Doc. # 172, Attach. 4). As nonmoving parties with the burden of proof on this dispositive issue, the plaintiffs may not rely on the mere allegations of their pleadings to oppose a properly supported summary judgment motion. See Fed R. Civ. P. 56(e); Celotex, 477 U.S. at 324. In their objections to the Report and Recommendation, the plaintiffs include two news reports and an email in support of their argument that a custom or policy exists. One news report states that Cox was suspended for two days for unspecified reasons that the city manager would not provide, and the other news report states that a former Darlington police officer was suing the city and Cox for sexual harassment, discrimination, and retaliation. The email is from the defendant's attorney and states that his office received an irate phone call from Cox when Stroud unilaterally scheduled his deposition for 6:00 a.m. Because the plaintiffs do not offer any reason for why these documents were not submitted earlier so that they could be reviewed by the Magistrate Judge when preparing the Report and Recommendation, this Court exercises its discretion to not take these documents into consideration in ruling on the Report. See Allen v. BMW Mfg. Co., 260 Fed. Appx. 623, 624 (4th Cir. 2008) (holding that a district court did not abuse its discretion in declining to permit the plaintiff to introduce new evidence after the filing of the Magistrate Judge's Report and Recommendation); Doe v. Chao, 306 F.3d 170, 183 (4th Cir. 2002) (holding that a district court did not abuse its discretion in declining to accept supplemental affidavits after the filing of the Magistrate Judge's Report). Even if this Court were to take this evidence into consideration, these documents are insufficient to create an issue of fact because the plaintiffs fail to demonstrate that the city's decision to tolerate the allegedly improper behavior on Cox's part as indicated in these documents "reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Bd. of Cnty. Comm'r of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 411 (1997) ("Brown"). Furthermore, the plaintiffs have failed to identify with precision the offending municipal policy that allegedly caused their injuries. Carter v. Morris, 164 F.3d 215, 219 (4th Cir. 1999) (holding that summary judgment was properly granted where the policy asserted by the plaintiff was that "that the City ha[d] remained deliberately indifferent to or ha[d] actively condoned a long and widespread history of violations of the federal rights of citizens on the part of its police department"). Through the documents included in their objections, the plaintiffs only suggest some sporadic allegedly improper behavior on Cox's part. This alleged behavior on Cox's part fails the "'rigorous standards of culpability and causation' required for municipal liability under section 1983." see Carter, 164 F.3d at 219 (quoting Brown, 520 U.S. at 405) (holding that a plaintiff's "claims that past generalized bad police behavior led to future generalized bad police behavior, of which her specific deprivations are an example" was a "nebulous chain [that] fails the 'rigorous standards of culpability and causation' required for municipal liability under section 1983").

Cnty. Comm'r of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 415 (1997) ("Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights."). As for Pembaur, the plaintiffs argue in their objections that Cox is "the final decision maker for the issues, which are the subject matter of the plaintiffs' Section 1983 lawsuit." However, with respect to the checkpoint where Groves was arrested, the plaintiffs do not sufficiently show that Cox or any other city official had final decisionmaking authority for authorizing or operating the checkpoint. Moreover, Cox testifies through an affidavit that Darlington city law enforcement officers had little discretion over the operation of the checkpoint. Cox Aff. ¶ 20, December 14, 2010 (Doc. # 172, Attach. 2). The plaintiffs provide no evidence in contradiction to this testimony. Second, with respect to Stroud's arrest at the Darlington City Police Department/Municipal Court Building, Chief Cox admits that Stroud was arrested based on his instructions. Id. at ¶ 8. Even so, the plaintiffs do not provide sufficient authority demonstrating that Cox is a final policymaker for the City of Darlington in the area of law enforcement, and this Court will not assume or conclude that he is a final policymaker simply because he is the chief of police for the city.[2] See, e.g., McMillan v. Monroe County, Ala., 520 U.S. 781 (1997) (holding that an Alabama county sheriff was a policymaker for the state, not the county); Allen v. Fidelity and Deposit Co. of Md., 515 F. Supp. 1185, 1191 (D.S.C. 1981) (finding that a South Carolina county was not accountable for the actions of its sheriff and deputy sheriffs).

---

[2] The plaintiffs include in their objections excerpts from Cox's affidavit where he states that he is the chief law enforcement officer for the City of Darlington and that he is responsible for general supervision of all personnel employed by his office. However, this Court finds that this is not a sufficient basis for establishing that Cox is a final policymaker for the city. Cf. Riddick, 238 F.3d at 523 (reasoning that the question of which officials are policymakers for the allegedly unconstitutional action in question is determined by looking to "'the relevant legal materials, including state and local positive law, as well as custom or usage having the force of law.'" (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989) (internal quotation marks omitted)).

Even if the plaintiffs could establish that their alleged injuries were the result of a policy or custom, summary judgment is also appropriate based on the Magistrate Judge's application of Heck v. Humphrey, 512 U.S. 477 (1994). The plaintiffs base their objection to the application of Heck on the Supreme Court's decision in Spencer v. Kemna, 523 U.S. 1 (1998), and the decision of the Fourth Circuit Court of Appeals in Wilson v. Johnson, 535 F.3d 262 (4th Cir. 2008). In Spencer, five members of the Supreme Court "found Heck's 'favorable termination' requirement inapplicable to a released inmate's § 1983 claim, since this was the only avenue by which he could access a federal forum." Wilson, 535 F.2d at 266 (describing the Supreme Court's opinion in Spencer). Four justices reached this conclusion through a concurring opinion, Spencer, 523 U.S. at 21 (Souter, J., concurring), and one justice did so through a dissenting opinion, Id. at 25 n.8 (Stevens, J., dissenting). These five justices did not join in an opinion, and Heck was not overruled. Nonetheless, in Wilson, the Fourth Circuit applied the reasoning of these five justices in Spencer to hold that Wilson, who alleged that Virginia improperly extended his sentence, could pursue a § 1983 action for wrongful imprisonment even though he did not satisfy Heck's favorable termination requirement. Wilson, 535 F.3d at 267-68.

Wilson is factually distinguishable from the case at hand. While Wilson was seeking monetary damages due to his sentence being improperly extended, Groves and Stroud are challenging the underlying basis for their arrests and subsequent convictions by alleging that their arrests were unlawful because probable cause was lacking. As such, the facts in this case are analogous to those in Heck where the plaintiff alleged that the actions of officials leading up to his arrest and conviction were unlawful. Heck, 512 U.S. at 479. Consequently, the facts directly invoke the Supreme Court's concerns about the ability of criminal defendants to collaterally attack their

convictions through a civil suit.  Id. at 484-85.  To allow the plaintiffs' unlawful arrest and First Amendment claims[3] to proceed would place this Court in situation where "a judgment in favor of the plaintiff[s] would necessarily imply the invalidity of [their] conviction[s] or sentence[s]."  Id. at 487.  Accordingly, the favorable termination requirement outlined in Heck applies to this case.  See id. at 486-87.  This is true even though the plaintiffs may not be able to access a federal forum through the other alternative avenue for challenging the constitutional basis of their convictions or imprisonments—a habeas petition—because they cannot meet the "in custody" requirement for federal habeas jurisdiction.  See id. at 500 (Souter, J., concurring) (expressing concerns about the reach of the majority's analysis in Heck).  The Supreme Court contemplated such a possibility when it outlined the favorable termination requirement in Heck.  See id. at 490 n.10.  Further, Spencer did not overrule Heck.  As a result, Spencer and Wilson do not preclude this Court's finding that the plaintiffs must meet Heck's favorable termination requirement before they can receive relief under causes of action that necessarily implicate the invalidity of their convictions.[4]

The plaintiffs also object to the Magistrate Judge's finding that summary judgment should be granted on the issue of whether officers used excessive force to effectuate their arrests.  After reviewing the Report and Recommendation and the objections thereto, this Court agrees with the Magistrate Judge's conclusion that the plaintiffs fail to present sufficient evidence to create an issue of fact regarding whether the force utilized in effectuating the plaintiffs' arrests was objectively

---

[3] See Mesa v. Prejean, 543 F.3d 264, 273 (5th Cir. 2008) ("If [probable cause] exists, any argument that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest must fail, no matter how clearly that speech may be protected by the First Amendment.").

[4] State court proceedings in the plaintiffs' criminal cases are ongoing as the plaintiffs state they filed a Petition and Complaint for Writ of Supervisory Control with the South Carolina Supreme Court on December 20, 2010.  Pl's Objections to the Report and Recommendation 50 (Doc. # 207).

unreasonable under the circumstances confronting officers at the time of their arrests.  See Graham v. Connor, 490 U.S. 386, 397 (1989); see also Groves Dep. 107, Sept. 30, 2010 (Doc. # 172, Attach. 3) (stating that he did not think the force used against him was more than normal); Stroud Dep. 60, Sept. 30, 2010 (Doc. # 172, Attach. 4) (stating that excessive force was used because the handcuffs were tightly applied and because there was no reason to arrest).

Finally, the plaintiffs object to the Magistrate Judge's recommendation that summary judgment be granted against them on their civil conspiracy claims.  In their objections, the plaintiffs argue that Darlington city officials conspired to refuse to dismiss the criminal charges pending against the plaintiffs and conspired to have them convicted of the charges before their § 1983 action went to trial.  To meet the "weighty burden to establish a civil rights conspiracy[,] . . . [a plaintiff] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416, 421 (4th Cir. 1996).  "In other words, to survive a properly supported summary judgment motion, [plaintiffs'] evidence must, at least, reasonably lead to the inference that [defendant] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." Id.  The plaintiffs fail to present such evidence and thus summary judgment is appropriate.[5]  Moreover, even if city officials acted pursuant to the conspiracy the plaintiffs allege in their objections, such a conspiracy does not result in a deprivation of the plaintiffs' constitutional rights because each plaintiff was given a jury trial during which he had an opportunity to challenge the sufficiency of the

---

[5] The Magistrate Judge also concluded in the Report that to the extent the plaintiffs allege that the defendant's employees conspired with each other, such a claim is barred by the intracorporate conspiracy doctrine.  See Buschi v. Kirven, 775 F.2d 1240, 1251-53 (4th Cir. 1985).  The plaintiffs argue in their objections that one of the exceptions outlined in Buschi to the intracorporate conspiracy doctrine applies.  See id. at 1252-53.  However, summary judgment is still appropriate because the plaintiffs fail to meet the burden outlined in Hinkle for surviving a properly supported summary judgment motion.  See Hinkle, 81 F.3d at 421.

8

basis for his arrest and conviction. In addition, their convictions negate their argument that the charges against them should have been dismissed. Further, even if city officials moved quickly to convict the plaintiffs on the charges pending against them, prosecuting officials still would have been required to meet their burden of proof to convict at trial. Regardless, the fact that Groves was arrested in December 2006 and Stroud was arrested in November 2007 and that they were not tried and convicted until December 2010 undermines the plaintiffs' argument that city officials conspired to swiftly convict them before their § 1983 action went to trial.

In light of the standard set forth in Wallace, the Court has reviewed, de novo, the Report and the objections. After careful review of the Report and objections thereto, the Court **ACCEPTS** the Report. (Doc. # 205). The plaintiffs' objections to the Report (Doc. # 207) are overruled. Therefore, for the reasons articulated by the Magistrate Judge, the defendant's motion for summary judgment (Doc. # 172) is **GRANTED** and this case is dismissed in its entirety. In light of this dismissal, all other pending motions in this case at this time are now moot.

**IT IS SO ORDERED**.

        s/Terry L. Wooten
United States District Judge

February 28, 2011
Florence, South Carolina